**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Crim. No. CCB-08-241 |
| THOMAS FIELDS | * | |

*******

## MEMORANDUM

Thomas Fields is a 49-year-old federal prisoner who is serving a 188-month sentence for drug trafficking. Fields has served 150 months, about eighty percent of his sentence. Now pending is Fields's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (the "compassionate release" statute), based on underlying health conditions that make him particularly susceptible to serious illness related to COVID-19. (ECF 121).[1] The government opposes the motion. (ECF 124). For the reasons explained below, the motion will be granted and Fields's sentence will be reduced to time served, followed by a four-year term of supervised release.

## BACKGROUND

In May 2008, the Drug Enforcement Administration (DEA) received information from a confidential source that James Smith was attempting to buy narcotics in the Baltimore area. An undercover DEA agent met with Smith to negotiate a future narcotics transaction. Smith eventually expressed that he wanted to purchase two kilograms of powder cocaine. The agent offered a location for the exchange to take place. The agent and Smith met at the agreed-upon location. Moments later, Fields also arrived in a vehicle, from which he retrieved approximately $51,000 in

---

[1] Through counsel, Fields supplemented his motion with correspondence regarding conditions at FCI Cumberland and the effect of Fields's motion on the status of his Maryland detainer. (ECFs 125, 127). The court considers those supplements.

1

U.S. currency. Fields was arrested. Upon his arrest, he told DEA agents that he had brought the money in order to assist Smith in the purchase of the cocaine. Fields pled guilty to one count of conspiracy to distribute and possess with intent to distribute 500 grams or more of powder cocaine, in violation of 21 U.S.C. § 846. (ECF 44, Plea Agreement, at 1, 7–9).

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. Before the First Step Act was enacted, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id.* But under the amended statute, a court may conduct such a review also "upon motion of the defendant," if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.* The court may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant it. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

On July 2, 2020, Fields filed an administrative request for compassionate release to the warden of FCI Cumberland, where he is currently incarcerated. (*See* ECF 122 at 3). The request was denied. (*Id.*). The government does not contest that Fields's motion is properly before the court. The only issues are (1) whether "extraordinary and compelling reasons" warrant the reduction of Fields's sentence and (2) if there is such a reason, whether the § 3553(a) factors weigh in favor of a sentence reduction.

## DISCUSSION

Section 3582(c)(1)(A) allows the district court to reduce a sentence if it finds "extraordinary and compelling reasons" to do so and that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 28 U.S.C. § 994(t), in turn, gives the Sentencing Commission the responsibility to define "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). The most recent Sentencing Commission policy statement defining "extraordinary and compelling reasons" for sentence reduction, Guideline § 1B1.13, predates the First Step Act and, as the Fourth Circuit recently held, is not a policy statement that applies to motions for compassionate release brought by defendants, because its plain text "constrains the entire policy statement to motions filed solely by the BOP, . . . and not by defendants themselves." *United States v. McCoy*, ---F.3d----, 2020 WL 7050097, *7 (4th Cir. Dec. 2, 2020) (internal quotation marks and citation omitted). In the absence of an "applicable policy statement[] issued by the Sentencing Commission" concerning what may be an "extraordinary and compelling reason" for compassionate release when a defendant brings a motion under § 3582(c)(1)(A), "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at *9 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

Here, Fields argues that he has underlying health conditions (chronic kidney disease and high blood pressure) that make him particularly susceptible to serious illness related to COVID-19 and that such risk to his health presents an extraordinary and compelling reason for his release. The government argues that these conditions are not a reason for his release, because he is receiving treatment for both, and Fields's high blood pressure in particular can be ameliorated with diet and exercise. (ECF 124 at 11).

3

The Centers for Disease Control ("CDC") has issued guidance on underlying conditions that increase an individual's risk of severe illness related to COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Dec. 1, 2020). The CDC distinguishes between those conditions where available data is strong enough and consistent enough to indicate that individuals with the condition "are at increased risk" (e.g., obesity), and those where current data is limited or mixed, and thus sufficient only to indicate that an individual with the condition "might be at an increased risk" (e.g., type 1 diabetes). *Id.* "Having chronic kidney disease of any stage" is a condition of the former category—it "increases your risk for severe illness from COVID-19[,]" and having hypertension may increase your risk. *Id.* Fields's medical records indicate that he has had hypertension for at least ten years and chronic kidney disease for at least six years, and though he has been treated for both conditions, they remain as persistent negative impacts on Fields's health. (ECF 124-2 at 3, 32, 34, 41–51). The court is thus unpersuaded by the government's argument that the BOP's or Fields's own efforts to ameliorate his illnesses will be effective in the near future.

Compounding the risk to Fields is the mere fact of his incarceration. *See, e.g.*, *Coreas v. Bounds*, 451 F. Supp. 3d 407, 413 (D. Md. 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."). While the BOP's efforts at containing the spread of COVID-19 are commendable, they by no means eliminate the risks to prisoners like Fields. Indeed, within the last week alone, FCI Cumberland has experienced an alarming increase in the number of inmates currently positive for COVID-19. Counsel for Fields informed the court on December 1, 2020, that the BOP was reporting nineteen active cases at FCI Cumberland among inmates. (*See* ECF 125). As of December 8, 2020, there were 200 active cases. *COVID-19: Coronavirus*, BOP, https://www.bop.gov/coronavirus/ (last accessed Dec. 8, 2020). Because

Fields's health conditions, and in particular, his chronic kidney disease, increase his risk of severe illness from COVID-19, the court finds extraordinary and compelling reasons exist for Fields's release. *See, e.g.*, *United States v. Johnson*, No. CR 4:16-577-BHH-1, 2020 WL 4501513, at *5 (D.S.C. Aug. 5, 2020) (finding inmate with chronic kidney disease and hypertension presented extraordinary and compelling reasons for release).[2]

The court also must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable[.]" *See* 18 U.S.C. § 3582(c)(1)(A).

The government opposes Fields's release under these factors largely on the basis that his criminal history shows that he is a dangerous recidivist.[3] Fields's record is significant. Fields committed an attempted robbery at gunpoint in 1991 and a robbery at gunpoint in 1992. Though Maryland courts initially suspended the majority of his sentences for those crimes, his probation was revoked after two additional convictions in 1996 for narcotics distribution and handgun possession. Fields ultimately served over ten years in Maryland prison for these offenses, and he was on probation from them when he committed the instant offense. The seriousness of this record is reflected in the initial sentence the court imposed. Fields's advisory guideline range was 188 to 235 months in large part due to Fields's criminal history and his status as a career offender under the Guidelines. The court agreed that Fields was a career offender and imposed a sentence within the advisory range. (ECF 83, Sentencing Tr., at 44).

Without minimizing Fields's prior criminal conduct or the court's determination that a 188-month sentence was warranted given his criminal history, the court considers it alongside Fields's

---

[2] Unpublished opinions are cited for the persuasiveness of their reasoning and not for any precedential value.

[3] The court notes that because Fields still has a detainer in Maryland as a result of his pending 2008 parole violation for his state offenses, if his sentence is reduced to time served, he will initially be released into state custody. At that time, he will have to address the pending violation with the State. (*See* ECF 122-4 at 3; ECF 127).

5

post-sentencing conduct, which "provides the most up-to-date-picture of [his] 'history and characteristics.'" *See Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). In 2011, early in his term at the BOP, Fields was found to have possessed a weapon at the BOP and to have abused phone privileges. (ECF 124-1 at 1). These initial problems are troubling, but at this point, Fields has demonstrated nearly ten years of non-violence and he has no further disciplinary record. Additionally, Fields has obtained his GED during his incarceration and has completed seventeen courses. (ECF 122-4 at 1–2). He appears to have maintained the support of family during his incarceration. Upon his release from state custody, he plans to live with the mother of his son, in Baltimore. (ECF 122 at 3). Fields has served the vast majority of his sentence and is scheduled to be released in November 2021, less than a year from now, and he agrees to serve the first year of his four-year term of supervised release on home confinement. After reviewing his history, the court is persuaded that accelerating Fields's release by less than a year poses a minimal risk to the community and is sufficient to provide just punishment for the offense and to deter further criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(A)–(C).

Based on the above considerations, and in light of the principle that a sentence should be "sufficient, but not greater than necessary," *see* 18 U.S.C. § 3553(a), the court finds that the § 3553(a) factors weigh in favor of reducing Fields's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). This, combined with the "extraordinary and compelling" risk to Fields of severe illness from COVID-19 should he remain in prison, leads the court to conclude that Fields is entitled to compassionate release.

## CONCLUSION

For the foregoing reasons, Fields's motion for compassionate release will be granted and his sentence will be reduced to time served. The associated motions to seal (ECFs 120, 123) are granted to protect the confidentiality of personal medical information.

The terms and conditions of supervised release to which Fields was sentenced will remain in place, with the additional condition that Fields will spend the first twelve months of supervised release on home confinement, to be monitored by U.S. Probation, using location monitoring technology at the discretion of the Probation Officer. For the twelve-month home confinement period, Fields shall not leave the address approved by U.S. Probation except for activities approved in advance by U.S. Probation. In addition, he will be required to comply with all directives of federal, state, and local governments related to public health issues, including COVID-19. A separate order follows, which will be stayed for up to fourteen days to make appropriate travel arrangements and to ensure Fields's safe transfer to Maryland custody or to the home address approved by the Probation Office, including by placing Fields in quarantine for a period of fourteen days and to evaluate him for the purposes of receiving a medical clearance.

　__12/10/2020__　　　　　　　　　　　　　　　　　　　　____/S/_____
Date　　　　　　　　　　　　　　　　　　　　　　　　　　Catherine C. Blake
　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge